Argued and submitted September 12, 1979, affirmed
February 11, reconsideration denied March 20,
petition for review allowed May 28, 1980

## JAMES,
*Respondent,*

*v.*

## STATE ACCIDENT INSURANCE FUND,
*Petitioner.*

### (No. 77-6474, CA 14647)

605 P2d 1368

[405]

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for petitioner. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Sidney A. Galton, Portland, argued the cause for respondent. With him on the brief were David J. Hollander, and Galton, Popick & Scott, Portland.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

In this workers' compensation case claimant seeks compensation for emotional disability. The referee held that claimant's claim for anxiety reaction resulting from work caused stress was compensable. The Workers' Compensation Board affirmed and SAIF appeals. The claim was made for benefits for an occupational disease, ORS 656.802 to 656.824. The State Accident Insurance Fund (SAIF) argues that claimant's disability did not arise from the conditions of her employment because the job stress she encountered was no more than that faced by the average worker and that her employment did not cause her condition but only caused it to become symptomatic.

Claimant, 35 years old, began work for the Portland Action Committee Together (PACT) in October, 1976, as an Information Referral Counselor. In April, 1976, she was promoted to the position of Service Coordinator. However, she continued carrying out the duties of her prior job as well as the duties of her new position. The duties of the two positions were in some measure inconsistent. An Information Referral Counselor was required to remain in the office at a desk while a Service Coordinator's duties included field work. Claimant experienced frustration in attempting to do both jobs.

In addition to the frustration of handling duties of two positions, claimant identified several other factors contributing to her anxiety. There was an acknowledged personality clash between claimant and her supervisor. This underlying conflict resulted in at least two confrontations where the supervisor reprimanded her in a loud, angry tone of voice in front of other staff members. Claimant also identified the physical set up of the working facilities as contributing to her emotional disability. The PACT staff was housed in a basement room with no windows, no air conditioning and no partitions between the individual

[407]

work spaces. Because of the lack of air conditioning the staff members were forbidden to smoke in the office area. Claimant was bothered by the lack of privacy and her inability to smoke while at her desk.

Claimant worked for PACT from October, 1976, until June, 1977, when she requested and was granted a leave of absence. She did not return to work and on July 1, 1977, she filed a claim for workers' compensation benefits. The claim was based on her inabiltiy to work because of anxiety and depressive neurosis.

Claimant had been receiving treatment from a psychiatrist intermittently for four years prior to filing the claim for compensation. She was diagnosed as having an anxious personality and would develop anxiety and depression at times of stress which occurred outside the home. She had shown improvement through group therapy in managing stress in confrontive situations. Her treating psychiatrist concluded that she was suffering from extreme anxiety and depression and a phobic reaction to her work situation which prevented her from returning to work. He concluded that the stresses of her employment, involving the frustration of attempting to handle two jobs and the conflict and confrontation with her supervisor, were the cause of her present emotional disability.

After leaving work claimant was examined and treated by a clinical psychologist. He concluded that she was unable to return to work because of anxiety and depression caused by the stress of the confrontation with her supervisor. Claimant was also examined by a psychiatrist on behalf of SAIF. He agreed with the diagnosis of claimant's treating psychiatrist and concluded that the identified stresses of her employment did exacerbate her preexisting emotional condition causing her to develop immediate symptoms of anxiety and depression of neurotic proportions. There was no contrary medical opinion.

SAIF analyzes claimant's claimed disability in terms of the accidental injury portion of the Workers'

Compensation Act. The thrust of the Workers' Compensation Act is to provide benefits to a worker who incurs medical expenses or suffers a disability which arises out of and in the course of his employment. Although the Oregon appellate courts appear to preserve the distinction between an accidental injury and occupational disease, there is little that follows from the distinction. *See O'Neal v. Sisters of Providence,* 22 Or App 9, 537 P2d 580 (1975); *Court v. SAIF,* 25 Or App 691, 550 P2d 776 (1976). A worker who suffers from a condition that requires medical services or results in a disability is entitled to compensation if the work relatedness requirement is met. A mental condition of the type at issue in this case can be compensated as an occupational disease.[1]

Having decided that a mental disorder may be compensable as an occupational disease, the next inquiry is whether claimant has proven the causal nexus between the disease and the work place. In addressing this question we are confronted with three correlative issues.

The first aspect of the causation problem is whether the stimulus which generates the mental disorder must be an extraordinary unanticipated event or events. We have held that a disabling physical disease which resulted from the cumulative effects of each day's exposure to specific identified conditions at work was compensable. *O'Neal v. Sisters of Providence, supra; Davidson Baking v. Ind. Indemnity,* 20 Or App 508, 532 P2d 810, *rev den* (1975); *see also Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970). We perceive no logical basis for applying a different standard to mental disorders which are the result of cumulative stress.

A related inquiry is whether the conditions of employment, claimed to be the precipitating cause of

---

[1] We use the terms mental condition and mental disorder only as a rough expedient to describe an infinite variety of conditions that may be compensable if the work relatedness test is met.

the mental disability, must be unusual in order for the disability to be compensable. SAIF. argues that we should adopt an objective analysis to determine if the work stress is sufficient to cause an adverse, disabling mental reaction in the average worker. SAIF contends the issue is not how claimant reacted to the perceived stress but how the average worker would react. That argument is supported by several Wisconsin cases which have adopted that view. *Johnson v. Industrial Comm.,* 5 Wis 2d 584, 93 NW2d 439 (1958); *School District No. 1 v. ILHR Dept.,* 62 Wis 2d 370, 215 NW 2d 373 (1974); *Swiss Colony, Inc. v. ILHR Dept.,* 72 Wis 2d 46, 240 NW2d 128 (1976). The principal basis of this view, as reflected in the Wisconsin cases, is that absent a requirement of unusual or excessive stress there would be no way to sort out the claims of malingerers. In order to protect against such abuses the Wisconsin court imposed the requirement that the employment environment be unusual or excessive to the point that the average worker would experience an adverse emotional reaction. *See also Sloss v. Industrial Commission,* 121 Ariz 10, 588 P2d 303 (1978).

The fear of opening "Pandora's Box" to contrived and fraudulent claims is not a justification to deny compensation to mentally disabled workers. Intangibles always present problems. In heart attack cases the Supreme Court and this court have held that a worker who suffers a heart attack due to the usual and ordinary stress of his job is entitled to compensation. *E.g., Clayton v. Compensation Department,* 253 Or 397, 454 P2d 628 (1969); *Coday v. Willamette Tug & Barge,* 250 Or 39, 440 P2d 224 (1968); *Anderson v. S.A.I.F.,* 5 Or App 580, 485 P2d 1236 (1971); *Foley v. SAIF,* 29 Or App 151, 562 P2d 593 (1977). In many of the workers' compensation cases involving back strain, the worker injured his back during the ordinary duties of his employment. It has never been suggested that a back claim should be rejected because the claimant was not subjected to unusual or excessive

stress, or that the identified stress would not cause a back strain in the average worker.

We appreciate the practical difficulties in determining if an emotional illness is real or feigned, but that is not a basis for adopting a stricter standard for recovery for emotional illness to cure the problem. Courts may feel more secure in being able to point to job conditions that would cause mental disability in the average person; however, the price of this requirement would be denial of claims of persons who are, in fact, disabled because of conditions of employment. There is no logical basis for distinguishing between physical and emotional disability. When the ordinary stress of employment causes a physical disability, the requirements of the law are met. This rule should not be made more strict simply because the result is a mental disability.

The etiology of a mental disability will generally, if not always, require an expert diagnosis to determine if the claimant is suffering from a disabling mental condition due to conditions of employment and to identify the source of the stress.

The third issue regarding the causal relationship between the workplace and the disability involves the worker with a preexisting emotional disorder. A literal reading of ORS 656.802(1)(a) would seem to indicate that the disease itself must arise out of the employment. In *Beaudry v. Winchester Plywood Co., supra,* the Supreme Court held that a disability resulting from worsening of a preexisting bursitis by the claimant's work activities and conditions was compensable under the Occupational Disease Law. In *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), the court set out a four part test to determine the compensability of an occupational disease related to a preexisting condition. The court said "that in order to prevail claimant would have to prove by a preponderance of evidence that (1) his work activity and conditions (2)

caused a worsening of his underlying disease (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services."

In its brief, SAIF contends:

"The employment did not cause Claimant's condition. The most that can be said is that during the employment period her preexisting condition became symptomatic."

Applying the *Weller* analysis, we conclude that claimant has established entitlement to compensation for an occupational disease. The report of her treating psychiatrist indicated she has been responding well to treatment prior to leaving work and was learning to manage the stress she was exposed to outside of her home. He concluded that her condition was worsened by the stress of those aspects of her job which he identified and that she was unable to manage or cope with the conditions of her employment resulting in disabling anxiety and depression. The reports from the other two experts were in agreement. The inference to be drawn from the medical reports is that claimant's underlying pathology was exacerbated and was not simply made symptomatic.

Affirmed.