Argued and submitted July 23, 1979, affirmed February 25,
reconsideration denied April 1,
petition for review allowed May 28, 1980 (289 Or 209)

## PARESI,
*Respondent,*

*v.*

## STATE ACCIDENT INSURANCE FUND,
Petitioner.

## (No. WCB 77-6083, CA 13485)
606 P2d 1172

Darrell E. Bewley, Associate Counsel, State Acci-
dent Insurance Fund, Salem, argued the cause for

petitioner. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Peter C. Davis, Portland, argued the cause for respondent. With him on the brief was Merten & Saltveit, Portland.

Before Thornton, Presiding Judge, and Richardson, Buttler, and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

In this workers' compensation case, claimant seeks temporary total disability benefits for an emotional disability. The State Accident Insurance Fund (SAIF) denied the claim. The Workers' Compensation Board adopted the opinion of the referee, which held the claim was compensable. SAIF appeals. In *James v. SAIF,* 44 Or App 405, 605 P2d 1368 (1980), we discussed the compensability of emotional disabilities. Many of the contentions advanced by SAIF in this case were answered in *James.* The remaining issue is factual: whether claimant has established that her disability arose out of and in the course of her employment.

Claimant, a 26 year old college graduate, commenced working for the Oregon Liquor Control Commission in August, 1976, as a liquor control officer. Prior to her employment at OLCC she had worked as a cocktail waitress in three different establishments. In each of these prior jobs she experienced conflicts with her supervisors and fellow employes, emanating from actions she took to correct what she perceived to be illegal or immoral activities.

In late 1976 and early 1977 at OLCC, claimant observed what she concluded were illegal activities on the part of the agency involving preferential treatment accorded certain OLCC licensees. Her approach to what she concluded was illegal and immoral brought her into conflict with her supervisors. She contends that as a result of her activities in attempting to make the agency conform to her high moral standards she was harassed by her supervisors. According to claimant she was subjected to increased criticism, intimidation, investigation of her private life and intense employe counseling sessions. She was frequently transferred between the various agency offices and criticized on the basis of anonymous complaints with no opportunity to refute the allegations.

[691]

She interpreted the activities of her supervisors toward her as harassment designed to force her to resign in retaliation for criticizing the agency.

In April, 1977, during an intensive counseling session involving several male supervisors, claimant became agitated and upset and when she attempted to leave she found the door was locked. The following day claimant consulted her physician because of headaches and loss of sleep over the previous few months. Her doctor diagnosed her condition as an acute anxiety depression syndrome resulting from the stress of her employment. Claimant took time off from her job. When her condition improved she returned to work, on a different shift involving different supervisors and the symptoms of her anxiety and depression have abated. She seeks temporary benefits for the time she was off work.

Claimant was examined by two psychiatrists on behalf of SAIF. Their reports, along with reports from two other physicians, were received in evidence. The medical reports were unanimous that claimant was suffering from an emotional disability that was caused by the confrontations with her supervisors and the stress of the criticism which claimant interpreted as harassment.

Claimant's supervisors testified that claimant was not harassed or subjected to any more criticism than other employes. They denied the agency was giving preferential treatment to any licensees and offered a logical explanation for the incidents (as intimidation or harassment) identified by claimant.

SAIF concedes that claimant suffered from anxiety and depression that was temporarily disabling and that there is no evidence of non-job related stress which would contribute to the emotional disability. SAIF argues that claimant's evident personality traits create conflicts with her supervisors and that her personality, not conditions of her employment, caused

the disability. In addition, SAIF argues, the employment conditions and environment identified by claimant and the physicians were the ordinary stresses of employment which would not cause an emotional disability in the average worker.

For the purposes of determining compensability under the Workers' Compensation Act, the employer must accept the workers as he finds them with all the latent and obvious physical and mental deficiencies. *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979); *James v. SAIF, supra.* That claimant, because of her personality traits, may have been more susceptible to anxiety and depression resulting from confrontation and criticism is not a basis for denying compensation, anymore than would a preexisting heart ailment which would make a worker more susceptible to a stress produced heart attack. Her reaction to what she interpreted as harassment from her supervisors was determined by the medical evidence to be the cause of her disability.

In *James v. SAIF, supra,* we rejected SAIF's contention that the cause of an emotional disability must be analyzed objectively to determine if the average worker would react emotionally to the particular stresses of the job. That is essentially the argument SAIF asserts here.

We conclude that claimant has met her burden of proving she was temporarily disabled and that her disability arose out of and in the course of her employment.

Affirmed.