Argued and submitted March 12, reversed in part;
affirmed in part May 5, reconsideration denied June 5, 1980,
petition for review allowed January 20, 1981

In the Matter of the Compensation of
KORTER,
*Petitioner,*

*v.*

EBI COMPANIES, INC.,
*Respondent.*

(No. 78-4179, CA 15588)

610 P2d 312

Sidney A. Galton, Portland, argued the cause for petitioner. With him on the briefs was Galton, Popick & Scott, Portland.

Frank A. Moscato, Portland, argued the cause for respondent. With him on the brief was Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant appeals from an order of the Workers' Compensation Board disallowing his claim of temporary psychiatric disability. He also raises a number of issues regarding the award of attorney fees at the hearing and Board levels. We reverse in part and affirm in part.

Claimant was 44 years old at the time of the hearing. He has a high school equivalency diploma, attended two years of college and received some specialized technical training. He began his employment with EBI, an insurance company, in October, 1975, as a Safety and Health Claims Consultant. In October, 1976, he was promoted to a position which involved some supervisory responsibilities in addition to his usual duties.

In March, 1977, EBI created a new claims investigation unit. Claimant was transferred to this unit as supervisor under the direction of the claims manager, John Paque. His title was changed and he was assigned an employee to work with him. Claimant testified that, at that time, he was responsible for the overall development and management of the investigative unit. He understood his duties and had no complaints about his job. He stated that his superiors did not express any criticism of his work and company memos indicate that, in fact, they were well pleased with the job he was doing.

In June, 1977, claimant took a vacation. When he returned he found that his world "had been turned upside down more or less." His entire work area had been changed, he had been moved to a smaller office, and had lost his secretary. He was informed by another employe, Calvin Vermeer, that Vermeer—not claimant—was now supervisor of the department and that, as a result, claimant's authority had been taken away.

[45]

Claimant testified that he was upset by this turn of events and wanted to discuss the matter with Paque. However, Paque was on vacation at the time. When Paque returned, a meeting took place between Paque, Vermeer and claimant. Paque sustained Vermeer's position as supervisor of the investigative unit and, according to claimant, asked claimant if he wanted to resign. Claimant decided to remain at EBI.

From that time on, claimant experienced difficulty in performing his job. He testified that he did not know what to expect each day when he reported to work. He was, at times, still performing supervisory duties and exercising authority over the unit. According to claimant, when things were running smoothly he was treated as head of the department but, when things were not going so well, he had no authority. His title was changed and he reported that Vermeer told him he would receive new business cards which would read "Supervisor, Field Claims Representative." He never received these cards.

Claimant testified that in March, 1978, Vermeer told him that he had not been working hard enough. Vermeer said that a memo had been received from a superior indicating that claimant had not been handling enough claims personally. Claimant was never shown the memo, even though he asked to see it, and was told to keep the conversation between the two of them.

Evidence from Paque and Vermeer confirms claimant's account of the changes at EBI. Paque reported that, during the summer of 1977, EBI was undergoing substantial changes. A reorganization took place while claimant was on vacation and Vermeer was placed in a supervisory position between Paque and the claimant. Paque testified that he placed Vermeer in this position because of Vermeer's considerable experience in the field, not because he was displeased with claimant's work. He testified that the nature of the changes and

the reasons for them were explained to claimant. Paque indicated his satisfaction with claimant's work and stated that he felt that claimant was one of the best investigators he had worked with.

Claimant was listed on various EBI documents as a supervisor. Paque's testimony indicates that every one listed as supervisor was a supervisor with the exception of claimant, who was "top man" of his unit. He admitted that claimant was held out by the claims department to be unit supervisor and was performing supervisory duties when, in fact, he did not officially have the title. Vermeer testified that he was supervisor and in control of the unit but that the claimant was to perform the actual day to day supervisory duties.

The statement of Jody Massengill, an employee in the investigative unit, indicated that there had been complaints about claimant's work in the spring and summer, just prior to the change in his job status. Once Vermeer replaced him as supervisor, she felt that claimant's authority was taken away little by little. She stated that Vermeer and the claimant did not get along and described the claimant as a difficult person to work for.

In the early part of April, 1978, claimant, who had been experiencing a number of physical difficulties, reported to his doctor. He was excused from work on request of his physician, Dr. Saddoris, because of hypothyroidism and stress- related health problems. Saddoris, who testified at the hearing, indicated that he had treated the claimant since September 7, 1977, for various problems including allergy, asthma, diabetes with reactive hypoglycemia, chest pain, and hypothyroidism. He admitted that some of the symptoms of hypothyroidism are also indicative of neurotic depression. However, he made it clear that, while he initially felt that claimant's thyroid condition may have been contributing to his work problems, his opinion changed when that condition improved and claimant was

[47]

still unable to cope with the difficulties he was having at work.

On April 27, 1978, claimant was admitted to the hospital because of a vasovagal reaction caused by acute distress. Dr. Saddoris testified that this was an anxiety reaction and not the result of any of his physical problems. As claimant continued to display depression, anxiety and open hostility to his work environment, Dr. Saddoris referred him to a psychiatrist, Dr. Summers.

Summers first saw the claimant on May 3, 1978. On his initial report, he felt that claimant was suffering from some psychophysiological reactions related to his emotional feelings. He related claimant's feelings of insecurity to mixed messages at work and not knowing what to expect from day to day. He also indicated a suspicion of manipulation on claimant's part.

In a report to claimant's attorney dated June 13, 1978, Summers diagnosed claimant as suffering from "acute adjustment reaction of adult life with agitation, depression and psychophysiological manifestations." Summers had, by the date of this letter, seen claimant on five occasions. He noted that the claimant described feelings of anxiety, depression, difficulty sleeping, inability to concentrate and a constant preoccupation with thoughts regarding his job. It was Summers' opinion that claimant's emotional condition had a direct relationship to his employment. However, he also felt that claimant's underlying personality contributed to the situation. Summers concluded that claimant's condition would not result in a long term disability and that claimant would be able to return to work with some different employer.

Summers' chart notes indicate that claimant blamed EBI for his current problems. Yet Summers also noted that claimant recognized much of his problem to be with himself. Summers felt that claimant's depression was job related, "but not necessarily caused

only by his job." He reported claimant's feelings, resulting from his job situation, to be not only anxiety and depression, but also of loss of self image and confidence and resentment towards EBI. He noted that claimant would break out in a cold sweat when he thought of returning to work.

Finally, in a report dated August 2, 1978, Summers noted that claimant continued to be anxious and depressed and was still complaining of inability to sleep and impaired concentration. He felt, however, that claimant was somewhat better and would be able to return to work soon, provided he could locate a position with a different employer.

Upon request by the carrier, claimant was also evaluated by Dr. Parvaresh. His opinion was based on a one hour and twenty-five minute interview and a review of claimant's medical records as well as statements of his co-workers at EBI. He concluded that claimant displayed a passive aggressive personality and anxiety neurosis associated with psychophysiological disorder. He noted signs of tension and anxiety and a great deal of repressed anger and hostility.

Dr. Parvaresh declined to draw a conclusion as to the cause of claimant's current problems. He stated, both in his report and deposition, that listening to the claimant might lead one to conclude that he was the victim of wrongdoing. On the other hand, when reviewing the statements of co-workers one might conclude that it was the claimant, by virtue of his passive aggressive personality, who created his own problems. While it was Parvaresh's belief, based on his personal experience, that it was the latter which created the problems.

On the basis of this evidence, the referee concluded that the claimant's psychiatric condition was a compensable consequence of his employment. The Board reversed the referee's decision, finding that the claimant failed to establish the necessary causal relationship between his job and his current symptoms. The

Board also based its decision on the fact that the claimant failed to show the existence of any physical injury sustained on the job, the fact that claimant failed to demonstrate that the work environment to which he was exposed was somehow different or out of the ordinary and on the fact that claimant had prior problems of stress and anxiety as displayed in his physical ailments.

Recently, this court in *James v. SAIF,* 44 Or App 405, 605 P2d 1368 (1980), decided that a mental condition, requiring medical services or resulting in a disability and which arises out of and in the course of employment is compensable under the Workers' Compensation Act. It is not necessary that there first be some type of physical injury. The worker is entitled to compensation on the existence of a mental disorder alone if the condition is work related.

With regard to causation, we set out the following principles:

"(1)  the mental disorder does not have to be the result of an extraordinary unanticipated event; it can result from the cumulative effects of each day's exposure to specific conditions at work;

"(2)  the conditions of employment, claimed to be the precipitating cause of the mental disability, do not have to be unusual; the disability is compensable if it results from the usual and ordinary job stress; and

"(3)  the claim is compensable even if the individual has a preexisting emotional disorder if he proves that his work activity and conditions caused a worsening of his underlying disease resulting in an increase in pain to the extent that it produces disability or requires medical services."

*Id.* at 409-412; *see also, Paresi v. SAIF,* 44 Or App 689, 606 P2d 1172 (1980).

Claimant's testimony, as well as his reports to Dr. Summers and Parvaresh, indicate that, because of what he perceived to be a demotion and loss of authority and the confusion in his role, he became anxious

[50]

and insecure and lost confidence and self esteem. He experienced depression and was unable to cope with the stresses of his work situation any longer. The referee found claimant to be a credible witness on this issue. Moreover, the objective facts are not disputed. Claimant did lose his supervisory position while on vacation and, while no longer officially a supervisor, he still performed the same duties and was listed as a supervisor on company documents. It may be that another person might not have reacted in the same manner. However, the only relevant inquiry is how this claimant reacted. We find that he clearly experienced anxiety and depression as a result of a specific indentifiable condition in his work environment.

Dr. Summers' reports indicate that he felt claimant's current condition to be directly related to his job situation and his perception of the changes taking place at EBI. It is true that claimant's underlying personality contributed to his problems, but this court has repeatedly stated that:

> "For the purposes of determining compensability under the Workers' Compensation Act, the employer must accept the workers as he finds them with all the latent and obvious physical and mental deficiencies."
> *Paresi v. SAIF, supra,* at 44 Or App 693.

Respondent relies to some extent on the report of Dr. Parvaresh. However, Dr. Parvaresh declined to give a definitive opinion on the cause of claimant's difficulties. He did state that, on the basis of his experience, he felt they resulted from claimant's underlying personality. Dr. Parvarash, however, saw claimant on only one occasion and his opinion was based, in part, on the statements of claimant's coworkers, some of which were not later placed in evidence. For these reasons, we find his opinion to be of less persuasive value than that of Dr. Summers.

We conclude that claimant has met his burden of proving that he was disabled and that his disability arose out of and in the course of his employment.

[51]

Claimant raises two matters on appeal relating to the award of attorney fees at the hearing and Board levels. These matters require an examination of the issues litigated at those levels.

Besides the issue of compensability, the referee was asked to decide if claimant was entitled to interim compensation from April 17, the day he left work, until May 10, and if the rate of compensation paid for temporary total disabililty should be recalculated to include a company car provided to claimant for company and personal use. The referee found for the claimant on all three issues, including compensability. He awarded claimant $3,000 in attorney fees. In addition to the award of interim compensation for the period of April 17, through May 10, he awarded claimant a 25 percent penalty for that period and an additional $200 in attorney fees.

The Board, on appeal by the employer, disallowed the claim but affirmed the balance of the referee's order. As a result of their decision, claimant was no longer entitled to the $3,000 attorney fees award. We have concluded that the claimant's disability is compensable. Thus, the $3,000 in attorney fees awarded at the hearing level will be reinstated.

Claimant contends, first, that the Board erred in not granting him attorney fees at the hearing and Board level for prevailing on the issue of the inclusion of the value of the car in calculating his monthly salary for the purpose of setting his rate of interim compensation. Secondly, he argues that the Board erred in not awarding attorney fees at the Board level when he prevailed on the issue of his entitlement to interim compensation and penalties for the period of April 17 to May 11.

Attorney fees in Workers' Compensation cases may be awarded only when expressly authorized by statute. *Atwood/Christensen v. SAIF,* 30 Or App 1009, 1011, 569 P2d 52 (1977). Claimant relies on ORS 656.382(2). That statute provides that:

> "(2) If a request for hearing, request for review or court appeal is initiated by an employer or the corporation, and the referee, board or court finds that the compensation awarded to a claimant should not be disallowed or reduced, the employer or corporation shall be required to pay to the claimant or his attorney a reasonable attorney's fee in an amount set by the referee, board or the court for legal representation by an attorney for the claimant at the hearing, review or appeal."

Here, the employer did initiate the request for Board review from an award for claimant at the hearing level. However, the Board reversed the referee and disallowed the disability claim; thus, the claimant is not entitled to attorney fees under this statute.

Claimant also draws our attention to ORS 656.386(1). The statute provides, in part, that

> "(1) In all cases involving accidental injuries where a claimant prevails in an appeal to the Court of Appeals from a board order denying his claim for compensation, the court shall allow a reasonable attorney fee to the claimant's attorney. In such rejected cases where the claimant prevails finally in a hearing before the referee or in a review by the board itself, then the referee or board shall allow a reasonable fee * * *."

This statute is not applicable to the circumstances before us. Claimant did not "finally prevail" before the Board; the Board found his claim of psychiatric disability to be non-compensable. He then appealed that decision to this court. Moreover, the appeal to the Board was not based upon a denial of the claim by the referee.[1]

The only other argument available to claimant is that, because he prevailed *in part* at the Board level,

---

[1] Claimant also argues that he is entitled to attorney fees for "prevailing" on the issue of the correct rate of compensation because the carrier unreasonably resisted the payment of that rate. Neither the referee nor the Board made a finding of unreasonable resistance. Moreover, there was no separate award of attorney fees, as required by ORS 656.382(1), to support a finding of unreasonableness. Claimant does not appeal the lack of such a finding or separate award of fees, thus the matter is not before us.

he is entitled to apportioned attorney fees. We disagree. If the Board had just reduced the amount of claimant's disability award allowed by the referee, claimant would not be entitled to fees under ORS 656.382(2). *See Bailey v. Morrison-Knudsen,* 5 Or App 592, 485 P2d 1254 (1971). Under this rationale, "prevailing" in technical issues while losing on the claim itself should not allow an award, either. It is true that one can lose on the claim and be awarded fees for unreasonable delay with respect to interim compensation. *See Jones v. Emanuel Hospital,* 280 Or 147, 570 P2d 70 (1977); *Williams v. SAIF,* 31 Or App 1301, 572 P2d 658 (1977). However, that is under a specific statutory authorization, *see* ORS 656.262(8), and is just what happened here when the Board affirmed the referee's award of $200 fees on the interim compensation issue but disallowed the claim and the $3,000 award of fees. Claimant would not then be entitled to separate fees under ORS 656.262(8) at the Board level, because that would mean respondent was being penalized twice.

We conclude that, where his claim for disability was denied by the Board, claimant is not entitled to attorney fees at the Board level for "prevailing" on matters unrelated to compensability.

Reversed in part, affirmed in part.