Argued and submitted June 10, affirmed as modified November 10, 1982

In the Matter of the Compensation of
Stanley P. Van DerZanden, Claimant.
VAN DERZANDEN,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 80-06147, CA A23478)

653 P2d 558

Gary M. Galton, Portland, argued the cause for petitioner. With him on the brief were Catherine Riffe, and Galton, Popick & Scott, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Claimant appeals from an order of the Workers' Compensation Board reversing the referee's award of 30 percent for permanent partial disability and reinstating the determination order award of 5 percent. He also seeks award of attorney fees at the Board level for increasing two penalty awards and an attorney fee award at the hearing level. We modify the award.

On January 9, 1980, claimant, 49, was injured on the job when he slipped and fell on an icy slope, hitting his head and back. At the time of the injury, he was plant superintendent for the City of Gresham water-treatment facility and had been employed by the city for approximately 13 years. He was initially treated by Dr. Ordonez, a neurosurgeon, who diagnosed a C-7 compression fracture of the neck and a cervical spine sprain. An x-ray examination of claimant's spine by Dr. Friedman revealed 30 percent loss of vertical height in the anterior aspect of the C-7 vertebral body. Dr. Ordonez prescribed pain medication and a cervical collar, which claimant wore for four months. On February 5, 1980, Dr. Ordonez released claimant for light-duty work on a part-time basis.

Before claimant's injury, the city had entered into negotiations to transfer the operation of its water-treatment facility to a private company, Envirotech Operating Services, which was accomplished in February, 1980. Thus, when claimant returned to work in February, he was working for a new employer, Envirotech, and was given a new assignment as Plant Training Coordinator at his previous rate of pay. The new position required him to conduct lectures, order training materials and organize seminars. He testified that he had had no training in those areas and experienced considerable difficulty in performing his new duties. He worked part-time for two or three weeks and then, at the request of his supervisor, discontinued working.[1] He stated that problems with his neck, shoulders, head and back interfered with his work.

---

[1] Dr. Ordonez stated that he received a call from claimant's supervisor requesting that he be told to stay off work because of dangerous conditions in the area that might cause him to fall.

On May 6, claimant was released by Dr. Ordonez for his "usual desk work." On May 14 he sought another medical opinion from Dr. Puziss, an orthopedic surgeon, who diagnosed a healed C-7 fracture and prescribed physical therapy for neck and low back discomfort. He released claimant for part-time desk work and concluded that he was entitled only to temporary partial disability. Dr. Puziss determined that claimant was medically stationary on June 23 and that he could return to his former sedentary work but advised against his returning to his position as training coordinator because of the stress that job caused, which the doctor believed could aggravate his cervical pain syndrome. Claimant returned to work for a short time in June and July and was ultimately terminated on August 29, 1980.[2]

At SAIF's request, claimant was examined on May 27 by Dr. Snodgrass, a neurologist. He noted claimant's complaint of pain in his neck, headaches, low back discomfort, lethargy and poor appetite. He stated that his examination was impeded by claimant's "functional overlay which is principally voluntary guarding and by lack of effort when testing strength." He concluded that claimant was capable of returning to work in a supervisory capacity and that he appeared to be depressed and fearful of losing his job.[3] After a later re-examination, Dr. Snodgrass recommended a psychiatric evaluation.

At SAIF's request, claimant was also examined by Dr. Shannon, a psychiatrist. She concluded that claimant was suffering from a mild to moderate psychophysiological disorder, which, although not directly related to his injury, provided him with a focus for his symptoms. She recommended further psychological testing to determine if he was suffering from pre-senile dementia. Dr. Reiter, a

---

[2] Envirotech wrote claimant:

"Your actions, public statements and lack of cooperation have given us no choice but to 'lay you off for lack of work' as of Friday, August 29, 1980."

Apparently claimant had been quoted in a newspaper article concerning the takeover by Envirotech as saying that he was not properly suited for a position of "classroom instructor or book writer."

[3] Claimant publicly opposed the take-over by Envirotech. He informed Dr. Snodgrass that because of his opposition, his job was in jeopardy for "political reasons."

psychologist, examined claimant on September 16. He diagnosed a mild to moderate deficit in verbal memory, which could result from early dementia but which was unlikely from a physical injury.

A determination order was issued on July 21, 1980, which awarded claimant temporary total disability from January 10, 1980, through June 23, 1980, less time worked, and 5 percent permanent partial disability for his neck injury. Claimant requested a hearing. The referee ordered SAIF to pay 30 percent permanent partial disability, a 15 percent penalty based on the temporary total disability award for late payment of interim compensation from May 5, 1980, through June 23, 1980, a 10 percent penalty for refusal to pay a medical bill and attorney fees of $150.

SAIF and claimant each requested review. The Board modified the referee's order, reinstating the 5 percent permanent partial disability, increasing the penalties to 25 percent for late payment of interim compensation and for refusal to pay the medical bill and awarding an additional $200 in attorney fees for services rendered at the hearings level.

■ The parties agree that claimant's permanent disability rating, under the relevant administrative rules, is greater than 5 percent. On *de novo* review, we conclude that claimant is entitled to 15 percent permanent partial disability.

■ ■ Claimant requests attorney fees at the Board level, contending that he was the prevailing party because the Board increased the penalties and attorney fees awarded by the referee. In workers' compensation cases attorney fees may be awarded only when expressly authorized by statute. *Atwood/Christensen v. SAIF,* 30 Or App 1009, 1011, 569 P2d 52, *rev den* 280 Or 521 (1977). Claimant relies on ORS 656.382(2):

> "(2) If a request for hearing, request for review or court appeal is initiated by an employer or insurer, and the referee, board or court finds that the compensation awarded to a claimant should not be disallowed or reduced, the employer or insurer shall be required to pay to the claimant or the attorney of the claimant a reasonable attorney's fee in an amount set by the referee, board or the

court for legal representation by an attorney for the claimant at the hearing, review or appeal."

Here, SAIF initiated a request for review of the referee's order. The Board reduced the disability award to 5 percent. Thus, claimant did not prevail on the compensation issue. *Bailey v. Morrison-Knudsen,* 5 Or App 592, 598, 485 P2d 1254 (1971). The Board did increase penalties and attorney fees. Nonetheless, as we noted in *Korter v. EBI Companies, Inc.,* 46 Or App 43, 54, 610 P2d 312 (1980), *remanded* 290 Or 301, *remanded* 51 Or App 206, 625 P2d 667 (1981), "'prevailing' in technical issues while losing on the claim itself should not allow an award [of attorney fees]."

Order modified to award 15 percent permanent partial disability; affirmed as modified.