Argued and submitted July 23, 1979, resubmitted in banc May 9, affirmed May 12, reconsideration denied June 16, 1980, petition for review allowed and remanded by letter January 20, 1981

In the Matter of the Compensation of
SHILLING,
*Respondent,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Petitioner.*

(No. WCB 77-7450, CA 13636)

610 P2d 845

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for petitioner. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Michael Strooband, Eugene, argued the cause for respondent. With him on the brief was Doblie, Bischoff & Murray, P.C., Eugene.

RICHARDSON, J.

JOSEPH, J., dissenting opinion.

## RICHARDSON, J.

In this workers' compensation case, claimant sought compensation for an emotional disability. The claim was denied by the State Accident Insurance Fund (SAIF). After hearing, the referee reversed and ordered SAIF to accept the claim. This order was affirmed by the Workers' Compensation Board with one member dissenting. The issue presented, whether the claimant's illness arose out of the course of her employment, is a factual one.

Claimant is 54 years of age and has worked for the Department of Motor Vehicles, in Coquille, for 10 years. Her duties include changing automobile titles, processing drivers' licenses, administering vision and written driver examinations, handling vehicle registration, answering telephones, ordering office supplies, taking inventory and completing required reports. For seven years she worked in the office alone. As the work load increased, she was given assistance and in 1974 she was joined by another full time employee who was made office manager. The work continued to increase with the growth in population. Since July, 1976, with the introduction of the photographic driver's license, the time required to prepare a license has markedly increased.

Claimant worked an eight hour day. She was not permitted to work overtime or take work home. Often there were long lines of people waiting for assistance and she would work through her morning and afternoon break and sometimes into her lunch hour. When the office manager was away from the office, giving driving tests, on speaking engagements or attending meetings, claimant would shoulder the entire work load.

In the fall of 1976, claimant began experiencing chest pain. The pains occurred when she was very busy at work. She did not consult a doctor at that time because the pains abated when her job became less

stressful. The frequency and severity of the pains continued to increase, and on August 29, 1977, she was examined by Dr. Nolan. On October 17, 1977, claimant was admitted to the hospital, complaining of a three day history of increasing chest pain. The diagnosis was coronary artery disease. She was released after four days. On October 25, 1977, claimant was again hospitalized because of chest pains. Tests indicated no organic cardiac problems. She was referred to the South Coast Psychiatric Associates, where Harold Jones, a counselor with a Masters Degree in social work, began seeing her on November 11, 1977. At the time of the hearing, on February 15, 1978, claimant was continuing the counseling sessions.

Claimant contends that the stress of the work environment caused her to become incapacitated. She testified at the hearing that she had not been a nervous person but that now she was tense, exhausted, cried a lot and had extreme chest pains. She developed a phobia about being in crowds and driving her automobile. She stated that the harder she worked the worse the chest pains became. In assessing the stress of her job she said:

> "* * * When you're trying to wait on people and the phone is ringing, and there's people backed clear up to the door, it concerns you."

Her treating physician, Dr. Nolan, who has had training in psychiatric diagnosis, stated that the main precipitant of the chest pain was the continuing, increasing pressure associated with the workload. He diagnosed her condition as a depression anxiety. Jones, the social worker, also concluded that the pressure claimant's workload and the frustration of trying to do her job created stress and anxiety which was the cause of her illness.

SAIF argues that the claim is not compensable because claimant was not under any greater pressure than similarly situated employees, that the pressure did not in fact exist and that claimant only perceived

it, and finally that claimant was under stress from situations outside of her employment which caused the illness. We have previously answered SAIF's first two contentions in *James v. SAIF*, 44 Or App 405, 605 P2d 1368 (1979). We now address the issue of claimant's ordinary stress of life.

SAIF enumerates several stressful situations which the claimant was under in the fall of 1977. She was concerned with menopause, obesity and bronchitis. There was no evidence in the record that these concerns operated to put her under sufficient stress to be considered the cause of her emotional disability. She was otherwise well adjusted and had no prior history of mental illness.

Claimant, however, was concerned over the health of her father. In August, 1977, she took him to Eugene for a week of radiation treatments for cancer and he was operated on and hospitalized in September, 1977. Dr. Maltby, the psychiatrist testifying on behalf of SAIF, concluded that concern over her father's health was the precipitating cause of her mental illness. Dr. Nolan and Harold Jones, on the other hand, were of the opinion that her job caused the precipitating stress. Both were aware of her father's illness. Claimant testified that she was concerned over her father's health but that her symptoms did not increase when he became ill.

Dr. Maltby's conclusions that her father's illness precipitated her emotional problems is suspect. He based his opinion on the belief that claimant's father was hospitalized before she consulted Dr. Nolan concerning the chest pains. Claimant's father was hospitalized in September, 1977. She had experienced the chest pains in the fall of 1976 and consulted Dr. Nolan for the first time on August 29, 1977. Dr. Maltby, in his interview with claimant, did not discuss her father's illness or its effect on claimant. He determined, from the interview, that claimant had a close relationship with her father but at the time he was

unaware of her father's illness. He assumed, based, as he testified, on common sense, that she must have been concerned about her father, and from this he concluded her father's illness was the cause of her anxiety and depression.

We conclude, after a review of the record, that the workload and the attendant frustration experienced by claimant was a significant and material cause of her disability. Claimant has sustained her burden of establishing a disability that arose out of and in the course of her employment.

Affirmed.

**JOSEPH, J.,** dissenting.

Although I accept the law in the opinion of Richardson, J., I am not persuaded by claimant's evidence "that the workload and the attendant frustration *** was a significant and material cause of her disability." Therefore, I dissent.

Thornton, J., joins in this dissent.