**CONSOLIDATED FREIGHTWAYS, Appellant (Employer-Defendant),**

v.

**Rodney DRAKE, Appellee (Employee-Claimant).**

**No. 83–203.**

Supreme Court of Wyoming.

March 30, 1984.

---

Glenn Parker (argued) and Thomas A. Nicholas of Hirst & Applegate, Cheyenne, for appellant.

Bert T. Ahlstrom, Jr., Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

This is an appeal from an order awarding worker's compensation benefits to appellant for a traumatic neurosis created by his employment.

We will affirm.

The statement of the issues, as presented by appellant are:

"1. Is 'mental collapse' due to stressful working conditions, which are the same as those of other employees, compensable under Wyoming Worker's Compensation Law?

"2. Was there substantial evidence of a causal connection between the conditions at Consolidated Freightways and the 'mental collapse' of Claimant Drake?"

Appellee began his employment in 1974 as an extra-board truck driver with Consolidated Freightways in Wichita, Kansas. An extra-board driver is on call twenty-four hours a day to take transports that the bid drivers cannot handle. After six months, appellee became a bid driver, which means that he drove trucks at scheduled times. Bid drivers have a definite schedule for driving and days off, while extra-board drivers do not.

In 1980, appellant, Consolidated Freightways, reorganized their corporate structure and moved all the truck drivers out of Wichita into various other terminals. The drivers were allowed to bid the area in which they desired to relocate, subject to seniority. Appellee bid on Cheyenne, Wyoming. At the time they were making the bids, they were informed how many people were going into a given area; he bid Chey-

enne believing he would have enough seniority that he would not be "laid off." Terminal management advised that his chances of becoming a bid driver almost immediately were excellent. Appellee moved to Cheyenne and began as an extra-board driver. He did not obtain a bid schedule until November 1982, two years after he had moved to Cheyenne and after filing a grievance through his union. During the second year appellee had complained of physical problems and fatigue. In January 1983, appellee and various other drivers were returned to the extra-board schedule due to a slowdown in freight passing through Cheyenne. After he was transferred back to the extra-board schedule, appellee suffered a mental breakdown and depression and did not return to work.

I

MENTAL COLLAPSE DUE TO WORKING CONDITIONS

Arthur Larson in his treatise, The Law of Workmen's Compensation, § 42.20 has delineated an analysis of three types of psychic injury: (1) a mental stimulus which causes a physical injury; (2) a physical trauma which causes a nervous injury; and (3) a mental stimulus which causes a nervous injury. This third type of psychiatric injury does not involve either physical causes nor physical results. The present situation fits within this third category.

Professor Larson states that there is already a distinct majority position which supports compensability in these cases, but acknowledges that there is a substantial number of jurisdictions which deny compensation in the third category. Id., § 42.-23.

A number of states that have allowed compensation for psychic injuries produced by mental stimulus have done so if a dramatic psychological trauma was present. However, Larson states, id., § 42.23(b) at p. 7–637 that:

"The fact that the stimulus is gradual, in the form of sustained tension, worry, strain, frustration, or harassment, does not, in the opinion of the majority of the courts that have dealt with the question, make nervous injury any the less compensable than if it were caused by sudden shock. * * * "

Larson argues that

"The real distinction here should be, not between sudden and gradual stimuli, but between gradual stimuli that are sufficiently more damaging than those of every day employment life to satisfy the normal 'arising-out-of' test, and those that are not. * * * " § 42.23(b) at p. 7–639.

The standards from other jurisdictions range from the totally subjective standard to the objective viewpoint. The subjective test focuses on the employee's own perception of reality in that if the claimant honestly perceives that there is some personal injury causing a disability during the ordinary work of employment he is entitled to recover. *Deziel v. Difco Laboratories, Inc.*, 403 Mich. 1, 268 N.W.2d 1, 97 A.L.R.3d 121 (1978). The objective viewpoint holds that the employee can recover if he is incapacitated by a mental or emotional disorder which is causally related to a series of specific stress-related incidents but not if the disability is caused by the general stress of his working conditions. *Camaioni's Case*, 7 Mass.App. 927, 389 N.E.2d 1028 (1979).

Larson recommends Wisconsin's approach as producing the most straight forward and reasonable method of determining whether an injury is compensable. Id., § 42.23(b) at p. 7–639. Thus,

" * * * in order for nontraumatically caused mental injury to be compensable in a workmen's compensation case, the injury must have resulted from a situation of greater dimensions than the day-to-day mental stresses and tensions which all employees must experience." (Footnote omitted.) *Swiss Colony, Inc. v. Department of Industry, Labor and Health Relations*, 72 Wis.2d 46, 240 N.W.2d 128, 130 (1976).

See, *School District # 1, Village of Brown Deer v. Dept. of Industry, Labor & Hu-*

*man Relations,* 62 Wis.2d 370, 215 N.W.2d 373 (1974).

Maine has adopted this position with the additional proviso that covers the subjective "eggshell," i.e., that ordinary work stresses will be compensable if clear and convincing evidence exists that the trauma is created predominantly from the employment. *Townsend v. Maine Bureau of Public Safety,* Me., 404 A.2d 1014 (1979). New Jersey held that in order for mental illness to be compensable, there must be objective evidence which, viewed realistically, carries the burden of proof that work was the contributing factor. *Williams v. Western Electric Co.,* 178 N.J.Super. 571, 429 A.2d 1063 (1981). In *Gamble v. New York State Narcotics Addict Control Comm'n,* 60 A.D.2d 703, 400 N.Y.Supp.2d 599 (1977), the court held that a psychic trauma relating to a job change was compensable. Oregon has held that causation is established even without an extraordinary unexpected event; that the condition of employment does not have to be unusual; and that the claimant can have existing mental problems. *Korter v. EBI Companies, Inc.,* 46 Or.App. 43, 610 P.2d 312 (1980). Recovery was also allowed for a continuing increasing pressure associated with the work load which created emotional disability. *Shilling v. State Accident Ins. Fund,* 46 Or.App. 117, 610 P.2d 845 (1980).

Wyoming Worker's Compensation Law defines injury as

" 'Injury' means any harmful change in the human organism other than normal aging, and includes damage to or loss of a prosthetic appliance and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. * * * "
Section 27–12–102(xii), W.S.1977.

This definition is broad enough to include mental trauma within the phrase "any harmful change in the human organism other than normal aging." Therefore, the question to be resolved is whether the injury was one "arising out of and in the course of employment." This is a case of first impression in Wyoming.

■ We have previously stated the policy that worker's compensation laws should be liberally construed whenever reasonably possible. *Mor, Inc. v. Haverlock,* Wyo., 566 P.2d 219 (1977). Thus, we hold that a non-traumatically caused mental injury is compensable under our worker's compensation law if it results from a situation or condition in employment that is of greater magnitude than the day-to-day mental stresses and tensions all employees usually experience. This standard appropriately balances the interest of the employee and the interests of the employers as well as incorporates the policy and intent of Wyoming worker's compensation laws.

■ We have stated that:
"Whether an injury arises out of and in the course of employment is a question for the trier of fact in a worker's compensation case. The burden is on the worker to prove that this injury arose in the course of employment. There must be some substantial competent evidence to warrant the trier of fact drawing such an inference. * * * " *Matter of Van Matre,* Wyo. 657 P.2d 815, 816 (1983).
It is the law of this state that the judgment of the trier of fact will not be disturbed when the fact findings are supported by substantial evidence. *Williams v. Northern Development Co.,* Wyo., 425 P.2d 594 (1967).

Applying these rules to appellee's claim, we note that there was evidence that his injury resulted from a situation of greater dimensions than the day-to-day mental stresses and tensions which are part of daily life. He was forced into a transfer because of a corporate reorganization. Because of the reasonable expectations of the job situation, he should have been made a bid driver very quickly. This did not occur. He did not become a bid driver until his union filed a grievance. Shortly after becoming a bid driver, he was again demoted

to extra-board status. Extra-board status created constant confusion, stress, and uncertainty. This yo-yo effect was sufficiently unexpected and created stresses and strains outside of the ordinary day-to-day pressures.

■■■ An employee is entitled to a presumption that the evidence presented at a worker's compensation hearing sustained the judgment. *Wyoming State Treasurer ex rel., Workmen's Compensation Department v. Schultz*, Wyo., 444 P.2d 313 (1968). The trial judge in this case noted that in regard to an objective degree of risk incidental to employment that

" * * * in Mr. Drake's case the doctor clearly states that Mr. Drake is suffering 'a traumatic neurosis as the result of either physical or psychological trauma * * * ,' "

He further stated

" * * * [c]ertainly a review of the authorities would reveal that claims may properly arise out of job conditions such as existed here where a particular position attained by the claimant after substantial struggle was suddenly snatched from him."

Whether or not this particular claim for compensation can be considered to result from a situation or condition of employment that is of greater magnitude than the day-to-day mental stresses and tensions which all employees must experience is a close question. The trial court found the evidence sufficient. We will not interfere with the trial court's findings unless they are clearly erroneous or manifestly wrong and totally against the evidence. *Valentine v. Ormsbee Exploration Corp.*, Wyo. 665 P.2d 452 (1983). We will not substitute

our judgment for the fact finder's determination of facts in the presence of substantial evidence. *Distad v. Cubin*, Wyo., 633 P.2d 167 (1981). There being substantial evidence to support this determination, it will not be disturbed.

## II

### THE CAUSAL RELATIONSHIP

Appellant contends that appellee did not sustain the burden of proof required of a claimant under the Wyoming Worker's Compensation Act and the provisions of § 27–12–603(a), W.S.1977.[1]

We recently stated in *Randell v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division*, Wyo., 671 P.2d 303 (1983), that the claimant has the burden of proof by a preponderance of the evidence in worker's compensation cases.

Dr. Preble stated in his deposition that "Mr. Drake is currently suffering from a traumatic neurosis, a traumatic neurosis as the result of either physical or psychological trauma that tests the extent of his coping mechanisms to the point that he's no longer able to cope.

"And the result is a state of anxiety coupled with depression in Mr. Drake's case. Now I've given the symptoms of that, which include intrusive thoughts, fears that are not entirely rational, inability to sleep, inability to relax with again, intrusive obsessive thoughts about the very situation that brought on the trauma, in this case the announcement that he was going to return from board

---

1. Section 27–12–603(a), W.S.1977, provides:
   "(a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to make proper proof of his claim by a preponderance of the evidence, and to also prove by competent medical authority that his claim arose out of and in the course of his employment, by showing by a preponderance of evidence that:
   "(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;

   "(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;
   "(iii) The injury can fairly be traced to the employment as a proximate cause;
   "(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and
   "(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee."

to bid after all the work he had put into getting bid duty."

The doctor further testified:

"Q. Doctor I think the bottom line question is going to come out eventually: Is this condition of Mr. Drake's work-related?

"A. Yes. My answer to that is yes.

"Q. And caused by his employment circumstances or situation? ,

"A. And caused by his work situation * * * "

We have stated that an injury is compensable if it arises out of and in the course of employment. A causal connection is supplied "when there is a nexus between the injury and some condition, activity, environment or requirement of the employment." *Matter of Willey*, Wyo. 571 P.2d 248, 250 (1977).

There was substantial evidence in the record to support the trial court's finding of a causal relationship between the conditions at work and the subsequent mental collapse. Therefore, the decision is affirmed.

BROWN, Justice, dissenting, joined by ROONEY, Chief Justice.

The majority adopts a rule that states, "Non-traumatically caused mental injury is compensible * * * if it results from a situation or condition in employment that is of greater magnitude than the day-to-day mental stress and tensions all employees usually experience."

The problem I have is that the majority does not correctly apply the rule it adopts to the facts of this case. The rule adopted by the majority is substantially the rule adopted in *School District # 1, Village of Brown Deer v. Department of Industry, Labor & Human Relations*, 62 Wis.2d 370, 215 N.W.2d 373, 377 (1974):

" * * * Mental injury non-traumatically caused must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience. * * * "

The same rule was adopted in *Sloss v. Industrial Commission*, 121 Ariz. 10, 588 P.2d 303 (1978); *Owens v. National Health Laboratories, Inc.*, 8 Ark.App. 92, 648 S.W.2d 829 (1983); *Townsend v. Maine Bureau of Public Safety*, Me., 404 A.2d 1014 (1979); *Seitz v. L & R Industries, Inc., Etc.*, R.I., 437 A.2d 1345 (1981); *Swiss Colony, Inc. v. Department of Industry, Labor and Human Relations*, 72 Wis.2d 46, 240 N.W.2d 128 (1976). See also 1B Larson Workmen's Compensation Law, § 42.23(b), p. 7–639 (1982).

The cases cited above, beginning with the 1974 Wisconsin case, hold that the worker must show more than the ordinary day-to-day stress to which all workers are subjected. The test to determine compensible mental injury announced by the majority is not a subjective test, that is, it is not how the employee reacts to the stress on the job; rather, it is an objective test, that is, whether the duties of the job subject the worker to greater stress than his fellow employees. *Pima Community College v. Industrial Commission of Arizona*, 137 Ariz.App. 137, 669 P.2d 115 (1983).

The majority has decided this case on the basis of a subjective test; in other words, how Mr. Drake, the appellee, reacted to the stress he experienced as a truck driver. This is contrary to cases cited by the majority and other cases I have cited.

The majority has not pointed to any evidence showing that appellee was subject to different or greater stress than his fellow truck drivers. My examination of the record reveals there is no such evidence. In fact, appellee's own testimony is to the contrary. For example, when appellee was transferred from a bid driver to an extra board driver seven other fellow employees were also transferred. To further illustrate that appellee's situation was the same as other drivers, he testified at trial:

"Q. Did Consolidated Freightways treat any of the drivers different as to when—or the amount of time they could take for a vacation? In other words, is this two weeks, up to ten years, is that uniformly applicable to all drivers?

"A. Yes.

"Q. What about sick leave, is that the same?

"A. That's the same.

"Q. Do any of the bid drivers in Wyoming know what their hours are?

"A. Just a few, a few of the very top number one bid drivers, they know pretty well just about what time of the day they're going to go.

"Q. And the rest of them don't have any idea, do they?

"A. No.

"Q. The extra board drivers don't have much idea about what their hours are either?

"A. No.

"Q. And that's uniformly applicable to all extra board drivers?

"A. As far as the rules are concerned, yes."

"The burden of proof by a preponderance of the evidence in worker's compensation cases is assigned to the claimant." *Randell v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division*, Wyo., 671 P.2d 303 (1983).

Appellee has failed to produce any evidence to show that the stress he was subjected to on the job was greater or any different than that experienced by his fellow employees.

I would reverse.