Melodi BAKER and Lorraine Bell,
Appellants (Plaintiffs),

v.

WENDY'S OF MONTANA, INC., a Montana Corporation, doing business in Wyoming; Wendy's International, an Ohio Corporation, and Scott Smith, Appellees (Defendants).

No. 84–4.

Supreme Court of Wyoming.

Aug. 28, 1984.

Stuart S. Healy, Sheridan, for appellants.

Michael K. Davis, Sheridan, and J. Dwaine Roybal of Keefer, Roybal, Hanson, Stacey & Jarussi, Billings, Mont., for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN * and CARDINE, JJ.

ROSE, Justice.

The appeal with which this opinion is concerned was originated in the trial court by appellants Melodi Baker and Lorraine Bell. The relevant portions of the complaint alleged assaults and batteries as well as intentional infliction of emotional distress upon the appellants by Scott Smith, an employee of appellee Wendy's of Montana, Inc. (hereinafter referred to as Wendy's), which company was also the appellants' employer and contributed to the Wyoming worker's compensation fund in their behalf. Wendy's filed a motion for summary judgment, which was granted on the ground that the claim was barred by the Wyoming Worker's Compensation Act, § 27–12–101, et seq., W.S.1977.

### FACTS

Lorraine Bell's claim flowing from alleged assaults and batteries recounts three specific incidents: two when Smith allegedly touched her on the breast and one when he is said to have touched her buttocks in an offensive manner. Ms. Bell further alleges that Smith uttered a particularly obscene remark, which she contends was addressed to her, and she also says that he made offensive gestures in her presence. This appellant seeks to recover $23 in medical expenses, $355 in damages for past lost wages, an undetermined amount for future lost wages and $30,000 for emotional and mental injury, which damages, she contends, resulted from these intentional improper acts of Mr. Smith.

Melodi Baker alleges that Smith also offensively touched her buttocks twice. She says that these touchings caused her to have headaches, and she further charges that Smith made sexual advances on at least two occasions. Ms. Baker was especially upset when Smith allegedly gave her an order concerning the obscene interplay that he wanted her to have with the male customers. As a result of these purported improprieties, Ms. Baker seeks to recover $142 damages for past lost wages and $40,000 damages for mental anguish.

In addition, the appellants jointly ask $1,000,000 in punitive damages.

It is urged that the liability of Wendy's arises out of its negligent failure to control Scott Smith's conduct and its negligent approval, ratification and participation in the intentional tortious acts of its managerial agent.

It is the appellants' theory that Wendy's should be held vicariously liable for compensatory and punitive damages for Smith's intentionally tortious conduct resulting in injury to appellants for the reason that the corporation was made aware of these touchings, utterances and other improprieties and did not adequately remedy or monitor the situation. The appellants go on to say that, in these circumstances, the injuries complained of were not covered by the Wyoming Worker's Compensation Act and the contributing employer is not, therefore, immune from suit by its employees.

---

* BROWN, J., did not participate in the decision of this case.

## THE ISSUE AND HOLDING

The principal issue which we must resolve is whether or not the exclusive-remedy provision of the Wyoming Worker's Compensation Act bars the appellants' claims against Wendy's.[1] We will hold that appellants' damages arise from "injuries" received in the scope of and arising out of their employment and, therefore, their sole remedy is to apply to the worker's compensation fund for such relief as it affords. The contributing employer is therefore immune from the suits which have been lodged by the appellants.

The summary judgment will be affirmed.

## BACKGROUND

In 1914, Art. 10, § 4 of the Wyoming Constitution was amended to read as follows:

"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. *The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and*

*all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death.*" (Emphasis added.)

Prior to the 1914 amendment, Art. 10, § 4 consisted of only the first two sentences. The purpose of the amendment, as expressed by Ch. 124, S.L. of Wyoming 1915, was to authorize the establishment of an Industrial Accident Fund—financed by industry and underwritten by the state— from which injured employees and the dependents of deceased employees who were injured or killed in covered employment could recover stipulated sums from the compensation fund without regard to fault, save only those instances where injury or death occurred through the culpability of the worker.

Following the amendment to Art. 10, § 4, the legislature enacted a worker's compensation law which was the legislative embodiment of a compromise between employers and employees who recognized the need for a new system to compensate employees for employment-related injuries without the employee having to rely upon tort concepts. *Meyer v. Kendig*, Wyo., 641 P.2d 1235, 1237 (1982). See also *Barnette v. Doyle*, Wyo., 622 P.2d 1349 (1981); *Stephenson v. Mitchell*, Wyo., 569 P.2d 95 (1977); *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P.981 (1918). The statutory trade-off for the employers contributing to the fund on behalf of their employees was the provision which gave the employer immunity from "all other rights and remedies" (§ 27–12–103(a), supra) which the injured employee might theretofore have possessed. In return, the covered employees and their dependent heirs received the benefit of rapid and certain relief for work-related injuries and death in exchange for forgoing their right to bring common-law

---

1. Section 27–12–103(a), W.S.1977, provides:
"The rights and remedies provided in this act [§§ 27–12–101 through 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments *are in lieu of all other rights and remedies against any employer making contributions required*

*by this act* or his employees acting within the scope of their employment unless the employees are culpably negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person." (Emphasis added.)

actions in tort against their employers who were contributing to their accounts in the worker's compensation fund. *Meyer v. Kendig,* supra, 641 P.2d at 1238; *Mauch v. Stanley Structures, Inc.,* Wyo., 641 P.2d 1247, 1249 (1982); *Zancanelli v. Central Coal & Coke Co.,* supra, 173 P. at 988.

■ The nature of the law in question is that of an industrial insurance act. This court originally placed this interpretation upon Wyoming's Worker's Compensation Act in *Zancanelli v. Central Coal & Coke Co.,* supra, and we have consistently reiterated this view. *Meyer v. Kendig,* supra; *Bence v. Pacific Power and Light Company,* Wyo., 631 P.2d 13 (1981); *Barnette v. Doyle,* supra; *Markle v. Williamson,* Wyo., 518 P.2d 621 (1974). The industrial-insurance concept evolved from the proposition that industrial accidents are a cost of production and should be borne by the industry. *Zancanelli v. Central Coal & Coke Co.,* supra, 173 P. at 989.

In *Cottonwood Steel Corporation v. Hansen,* Wyo., 655 P.2d 1226 (1982), we took time to point out as clearly as we knew how that tort law was not to be considered an ingredient of the worker's compensation formula because, under our statutes, worker's compensation liabilities and obligations are structured within the realm of contract law—it is like industrial insurance. As between the employer and the employee, except where the employee is culpably negligent, worker's compensation in Wyoming is not structured as a tort concept, where duty, breach of duty, injury, proximate cause and damages become the concerns of the litigants and the courts. In *Cottonwood,* we said:

> "The amendment to Art. 10, § 4 of the Wyoming Constitution and subsequent enabling legislation did not contemplate that tort law would hold any office in the Worker's Compensation Act except that the employer could defend against claims of the injured employee on the grounds that he or she was culpably negligent. Soon after the amendment to Art. 10, § 4 of the Wyoming Constitution, this court said that the Wyoming worker's compensation scheme was in the nature of an industrial-accident policy. *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981 (1918). See: *Hotelling v. Fargo-Western Oil Co.,* 33 Wyo. 240, 238 P. 542 (1925); *In re Byrne,* 53 Wyo. 519, 86 P.2d 1095, 1101 (1939); and *Fuhs v. Swenson,* 58 Wyo. 293, 131 P.2d 333, 337 (1942). See also *Markle v. Williamson,* supra, where we said:

>> " 'To say that workmen's compensation in Wyoming is in the nature of insurance is to say it stems from contract. Indeed, the clear implication in *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981, 989, is that our Workmen's Compensation Act is in contract and not in tort.' 518 P.2d at 624.

> "We have never changed our minds about that proposition. Sometimes we have had trouble keeping tort concepts out of the worker's compensation law, *Stephenson v. Mitchell,* Wyo., 569 P.2d 95 (1977), and *Meyer v. Kendig,* supra, but we have never deviated from our adherence to the proposition that the worker's compensation law of this state is in the nature of industrial-accident insurance." 655 P.2d at 1236.

■ For all the same reasons that an employer may not avoid paying a compensation claim where the worker is injured through his or her own ordinary negligence, the worker does not have a tort action against the employer when he (or it) is negligent and the worker is covered. This is so because the act creates liability without fault on the part of the contributing employer and likewise provides the employer with absolute immunity from tort actions including the employer's violation of his duty of care whether the negligence is ordinary or culpable. *Mauch v. Stanley Structures, Inc.,* supra, 641 P.2d at 1250; *Barnette v. Doyle,* supra, 622 P.2d at 1352. This is to say that immunity is absolute. *Mauch v. Stanley Structures, Inc.,* supra, 641 P.2d at 1252 (Rose, C.J., specially concurring).

Our various interpretations of § 27–12–103(a), W.S.1977, reflect the absolute immunity afforded contributing employers under the worker's compensation laws of Wyoming.

"It is clear that the language 'take the place of any and all rights of action' and 'shall be exclusive of all other rights and remedies', means just what is said and needs no judicial construction. * * * [A]s a general proposition, the exclusive remedy of the Wyoming workmen's compensation laws is the only remedy available unless the employment was unlawful or illegal." *Jordan v. Delta Drilling Company*, Wyo., 541 P.2d 39, 48 (1975). "As to a contributing employer, compensation from the fund was made the sole and exclusive remedy for a covered workman." *Markle v. Williamson*, supra, 518 P.2d at 625.

### THE LAW APPLICABLE TO THIS APPEAL

Appellants set forth several contentions which they urge have the effect of removing their claims from the worker's compensation law.

#### The Appellants' Contentions

"The appellants contend that the Wyoming Worker's Compensation Act does not provide absolute immunity to an employer for intentional torts of assault and battery and intentional outrageous conduct inflicting emotional distress committed by a supervisory agent of the employer because:

"1. An intentional act of assault and battery or obscene conduct is not an 'accident' for which Worker's Compensation benefits are provided.

"2. Mental anxiety is not an 'injury' for which benefits are provided under the Act.

"3. The injuries to appellants resulting from the tortious acts of the managing agent of appellee, Wendy's of Montana, Inc., while occurring 'in the course of' employment did not 'arise out of' the employment from the standpoint of the statutory definitions."

■ The single issue for our decision in this appeal is: Was the claimed harm—i.e., assault and battery to the persons of the appellants and intentional infliction of emotional distress—a covered "injury" within the contemplation of the Worker's Compensation Act? If the appellants' allegations of harm constitute "injury" as conceived by the Act, and if it was inflicted when the appellants were within the scope of their employment, there cannot be an independent right of action against Wendy's because that company is the contributing employer of the appellants and would therefore be absolutely immune from suit.[2] The test for determining whether the exclusive-remedy provisions of the Worker's Compensation Act operate to prevent actions against covered employers for intentional acts of employees is whether or not the claimed injury would be compensable under the Act.

"In determining whether the workmen's compensation statute in general and the exlusivity provision in particular preclude an employee from bringing an action at law against his employer for fraud, defamation, false imprisonment or the like, most courts have inquired whether the injury complained of is one which was compensable under the Compensation Act." Annot., 46 A.L.R.3d 1279, 1282.

Assuming this to be the test for deciding whether the worker's compensation statute, § 27–12–103, provides the workers with an exclusive remedy under the facts of this case, it becomes necessary to determine whether the kinds of injuries which are claimed by the appellants would be compensable under the Worker's Compensation Act.

#### Emotional Injury Is Compensable

The relevant Wyoming statute provides as follows:

" 'Injury' means *any harmful change* in the human organism other than normal

---

2. See n.1, supra.

aging, and includes damage to or loss of a prosthetic appliance and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business." (Emphasis added.) Section 27–12–102(a)(xii), W.S.1977.

The trial court found that the appellants' claims were for "psychic injuries" when the judge said:

> "It seems to me that the balance we have to strike here is that if they're covered, if they could get benefits under the Act, then the employer has immunity. And it seems to me that that definition is just so broad, any detrimental harm to a human organism, or whatever that—short of aging, I think that encompasses psychic injuries."

It is well established that mental disorders are compensable under the various worker's compensation acts of the country. The Annotation at 97 A.L.R.3d 161 collects cases in which mental disorders have been held to be compensable. In *Albertson's, Inc. v. Workers' Compensation Appeals Board*, 131 Cal.App.3d 308, 182 Cal.Rptr. 304 (1982), the plaintiff was employed at a bakery in an Albertson's store. She had problems getting along with her supervisor, who threatened to get rid of her, and told her " ' "[y]ou better get your butt in high gear because there's nothing here to sell." ' " The plaintiff in that case claimed she was " 'so embarrassed that [she] just wanted to die,' " and that she was forced to take tranquilizers to compensate for her depression and other psychological factors. This is Ms. Bell's claim in the case at bar. The court, in Albertson's, held that the claims were compensable.

> " * * * ' . . . In order to find a physical industrial injury, a single identifiable traumatic experience need not be shown. [Citations.] The disabling injury may be the result of the cumulative effect of each day's stresses and strains. [Citation.] We perceive no logical basis for a different requirement for a psychoneurotic injury. To one experiencing it, such an injury is as real and disabling as a physical injury.' * * * (*Callahan v. Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 621, 628, fn.3, 149 Cal.Rptr 647.)" 182 Cal.Rptr. at 307.

In *Swiss Colony, Inc. v. Department of Industry, Labor and Human Relations*, 72 Wis.2d 46, 240 N.W.2d 128 (1976), the plaintiff suffered a nervous breakdown which she attributed to the heavy workload in the workplace together with the fact that her supervisor was

> " * * * negative, brusque, and belittling, especially to women, and that he challenged and belittled any decision [the plaintiff] would make." 240 N.W.2d at 131.

The Supreme Court of Wisconsin held that the injury was compensable, so long as the plaintiff's mental disturbances were caused by the stress and strains of her employment.

In *Carter v. General Motors Corporation*, 361 Mich. 577, 106 N.W.2d 105 (1960), the plaintiff was working as a machine operator in a General Motors plant. When he attempted to follow proper procedures in doing his job, he fell behind. When he took shortcuts, he violated procedures at the plant, and was berated by his supervisor. As a result of all this, he claimed he suffered a disabling psychosis. The Michigan Supreme Court held that the injury was compensable.

See also *Todd v. Goostree*, Mo.App., 493 S.W.2d 411 (1973); for mental injury resulting from overwork, *Fireman's Fund Insurance Co. v. Industrial Commission*, 119 Ariz. 51, 579 P.2d 555 (1978); for shock resulting from having found the plaintiff's supervisor's body after he had committed suicide, *Wolfe v. Sibley, Lindsay & Curr Co.*, 36 N.Y.2d 505, 369 N.Y.S.2d 637, 330 N.E.2d 603 (1975); and for disability resulting from stress associated with a demotion, *Korter v. EBI Companies, Inc.*, 46 Or.App. 43, 610 P.2d 312 (1980).

These above-cited cases holding mental injury to be compensable under worker's compensation laws are consistent with the holding of this court on the subject.

In *Consolidated Freightways v. Drake*, Wyo., 678 P.2d 874 (1984), we held that nontraumatically caused mental injury was compensable under certain work conditions. We noted with approval that Larson in 1B Law of Workmen's Compensation, § 42.20, has delineated three types of psychic injury:

(1) a mental stimulus which causes a physical injury;

(2) a physical trauma which causes a nervous injury; and

(3) a mental stimulus which causes a nervous injury.

In the case at bar, the appellants charge that they received both a physical trauma (touching) which caused a nervous injury (category (2) of Larson, supra) and a mental stimulus which caused a nervous injury (category (3) of Larson, supra).

▮ In *Consolidated Freightways*, we addressed a set of facts which contemplated category (3) of Larson, supra, i.e., a mental stimulus which causes a nervous injury. In holding this category of non-traumatically caused psychic injury to be compensable, we said that it must have resulted from a situation of greater dimension than the day-to-day mental stresses and tensions which all employees must experience, citing Wisconsin Supreme Court authority from *Swiss Colony, Inc. v. Department of Industry, Labor and Health Relations*, supra, and *School District # 1, Village of Brown Deer v. Department of Industry, Labor & Human Relations*, 62 Wis.2d 370, 215 N.W.2d 373 (1974). We went on to cite other states' authority, all holding that nontraumatically induced mental injury is compensable according to the distinctions which are described in the opinions cited at 678 P.2d at 877. We then held, in *Consolidated Freightways*, that the facts of that case supported a finding that the nontraumatically induced injury resulted from a situation of greater dimensions than the worker's day-to-day mental stresses and tensions that were a part of his daily work life and therefore his injury was compensable.

In similar fashion, the verbal abuse and offensive manners of appellants' supervisor created an employment condition characterized by pressures and tensions beyond those usually experienced by employees. Under our holding in *Consolidated Freightways*, the psychological injuries resulting from such unusual employment strain qualify for compensation under the state Worker's Compensation Act.

▮ With respect to category (2) of Larson, supra, we can find no reason to accept concepts which argue that a physical trauma which causes a nervous injury should *not* be regarded as compensable while holding, in *Consolidated Freightways v. Drake*, supra, that a mental stimulus which causes a nervous injury *is* compensable (category (3) of Larson, supra).

Larson says of category (2), supra, physical trauma causing nervous injury:

"Conversely, when there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic, psychotic, depressive, or hysterical symptom, functional overlay, or personality disorder, have accepted this rule."[3] Larson, supra, § 42.22.

### Arising Out of the Employment

▮ The parties to this appeal agree that the appellants' injuries occurred "in the course of" their employment or "in the scope of" their employment, as those phrases have been interpreted by this court. *Cottonwood Steel Corporation v. Hansen*, supra; *In re Willey*, Wyo., 571 P.2d 248 (1977); *In re Jensen*, 63 Wyo. 88,

---

**3.** See n.68 of § 42.22, Larson, supra, for extensive authority.

178 P.2d 897 (1947). Appellants, however, contend that while they suffered their injuries in the course of employment, the injuries did not "aris[e] out of" employment within the meaning of § 27–12–102(a)(xii), W.S.1977.[4] We have held that, in order for this section of the Act to be complied with, there must be a causal connection between the injury and the course of employment, and that the causal connection is supplied

" * * * when there is a nexus between the injury and some condition, activity, environment or requirement of the employment." *In re Willey,* supra, 571 P.2d at 250.

■ We have said:

" * * * [T]he injury is compensable if it arises out of and in the course of employment. *This requirement emphasizes the need for a causal connection between the injury and the employment. Such a causal connection is supplied when there is a nexus between the injury and some condition, activity, environment or requirement of the employment. Parrott v. Industrial Commission of Ohio,* 145 Ohio St. 66, 60 N.E.2d 660. See, *Standard Oil Co. v. Smith,* 56 Wyo. 537, 111 P.2d 132; *In re Jensen,* supra; *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Boston,* Wyo., 445 P.2d 548. Cf., *White Ditching Company v. Giddeon,* Wyo., 413 P.2d 45. *It is this requirement, and only this requirement, which is envisioned by the language contained in § 27–311(n)* [now § 27–12–102(a)(xii), W.S.1977]." (Emphasis added.) *In re Willey,* supra, 571 P.2d at 250, quoted in *Cottonwood Steel Corporation v. Hansen,* supra, 655 P.2d at 1232–1233.

4.  Section 27–12–102(a)(xii), W.S.1977, provides:
    " 'Injury' means any harmful change in the human organism other than normal aging, and includes damage to or loss of a prosthetic appliance and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous

Larson, in his treatise, Workmen's Compensation Law, says:

"In practice the 'course of employment' and 'arising out of employment' tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." 1A Larson, supra, at § 29.00, p. 5–354.

It cannot be seriously argued that the facts of this case do not meet the nexus test quoted from our opinions supra. According to that test, the injury clearly arose out of the employment.

## CONCLUSION

■ We hold that the injuries complained of are compensable from the worker's compensation fund under the Worker's Compensation Act; that the injuries do arise out of the employment in question; and, therefore, the employer is absolutely immune from the suits brought by these appellants.

Affirmed.

duties incident to the business. The term does not include:
    "(A) Any communicable disease unless the risk of contracting the disease is increased by the nature of the employment;
    "(B) Injury caused by an employee's intoxication or by his willful intention to injure or kill himself or another; or
    "(C) Injury due solely to the culpable negligence of the injured employee."