In the Matter of INJURY TO Eugene F. POTTER, an employee of RMT Properties, Inc.

Eugene F. POTTER, Appellant (Employee-Claimant),

v.

RMT PROPERTIES, INC., Appellee (Employer-Defendant).

No. 85–174.

Supreme Court of Wyoming.

March 6, 1986.

Daniel E. White of Vines, Rideout, Gusea & White, Cheyenne, for appellant.

E. William Rideout, III, Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from the district court's denial of a worker's compensation permanent partial disability claim. The district court held that the worker failed to carry his burden of proving that a worksite injury caused his partial disability. We must decide whether there was sufficient evidence to support the district court's factual determination.[1]

* Retired November 1, 1985.

** Retired November 30, 1985.

1. Appellant Eugene Potter (claimant) maintains in his brief that the district court required him to apportion the amount of his disability between the worksite accident and his preexisting back problems. He argues that such an apportionment, which reduces a worker's award based on a preexisting condition, is improper because the employer must take the worker as he finds him and pay for all the disability that is caused by a work-related event.

We do not have to reach any conclusions about the so-called apportionment rule because we do not think that the district court based its decision on that rule. Instead, the district court held that claimant failed to prove by a prepon-

We affirm.

In January of 1984 claimant Eugene Potter, a 59-year-old boilermaker, slipped on a patch of ice at the Husky Oil Refinery in Cheyenne and fell on his back. He did not miss any work, but he did consult his family physician who began a course of physical and drug therapy. Claimant's employer, appellee RMT Properties, Inc., consented to his worker's compensation claims covering the cost of these treatments, and they were paid. Claimant suffered another injury several weeks later when he pulled his back while turning a wrench at the plant. This injury, like the first, did not cause claimant to miss work, but he did continue to receive worker's compensation benefits for back treatments.

In May of 1984, the upstream assets [2] of Husky Oil Company were purchased by Marathon Oil Company and the downstream assets, including the Cheyenne refinery, were transferred to a Husky subsidiary, RMT Properties, Inc. As part of the reorganization, older workers, including claimant, were offered early retirement with a special severance package. Claimant accepted the package and retired on June 1, 1984.

Shortly after retiring, claimant visited Dr. Kline who had successfully treated him for back problems since 1958. He told Dr. Kline of the incidents in January and February, 1984, and complained of continued back pain. After x-rays, Dr. Kline diagnosed claimant's condition as degenerative arthritis of the spine and facetteal joints.

Throughout the summer and fall of 1984, claimant continued to visit Dr. Kline for his back pain, and he submitted claims for those visits to worker's compensation. Finally, on December 21, 1984, claimant filed a claim for permanent partial disability under § 27–12–403, W.S.1977. The employer

contested the claim, and the case was set for trial.

At trial, Dr. Kline testified on claimant's behalf. He repeated to the court his diagnosis of claimant's condition as degenerative arthritis, a condition which, according to Dr. Kline, takes a long time to develop. He testified that it could have developed in claimant through heredity, small repetitive injuries, heavy labor, or just sixty years of normal life.

While Dr. Kline never said that claimant's work injuries in the winter of 1984 caused the arthritis, he did testify that the work injuries caused the arthritis to become symptomatic; in other words, the arthritis became painful and disabling after the injuries. Specifically, Dr. Kline was asked, "[Do] you attach some significance to the fact that the arthritic condition became symptomatic after the January incident where he slipped and fell at work?" He responded, "I think that is the straw that broke the camel's back." On other issues, Dr. Kline testified that claimant's condition was incurable, that he would never be able to do heavy work, and that he was, therefore, 25 percent permanently disabled.

The district court denied appellant's claim, basing its decision primarily on claimant's failure to establish a causal connection between the 1984 worksite accidents and the 25 percent disability. In its opinion letter, the court stated:

"The problem, as I see it, is that the disability is directly attributable to a disease of degenerative arthritis, as both doctors testified. There is a suggestion by claimant, and Dr. Kline in part sustains this, that the injury of the claimant in January, 1984, during and at work, may have been an aggravation of the preexisting arthritic disease. The prob-

derance of the evidence that *any* of his disability was caused by the worksite accident. Without establishing some causal connection between the workplace accident and his disability, a worker clearly cannot recover under §§ 27–12–102(a)(xii) and 27–12–403, W.S.1977. It is the court's determination on the cause issue which we must review.

2. In the oil business upstream assets are related to the exploration, extraction and transportation of crude oil while downstream assets are those which relate to refining and marketing of the finished product.

lem with that, however, is that there is no testimony or evidence of any kind in the record to show that the 25% disability resulted from the aggravation of the January, 1984, injury in whole or in part. The testimony is that the disability of 25% impairment of the body as a whole results from the arthritic disease itself. If there was, in fact, an aggravation of the preexisting arthritic disease, did such aggravation cause the plaintiff to be 25% disabled? Or, did such aggravation, if any, cause a 20%, or a 15%, or 0% disability? There is no evidence from which I can make any finding in this regard."

Claimant made a timely motion for new trial which the district court denied after a hearing. The court's statements at the hearing provide an additional insight into the court's reasoning on the critical causation issue:

"I have to repeat what I said in my letter opinion, that taking into account, as a factual matter, I listened to the claimant and all of the other evidence; I was not overly impressed with the weight of the claimant's testimony—and my function is sorting out and assigning credibility and weight. In all honesty, I would have to say that Mr. Potter came through to me as a man who was somewhat upset at his employer and felt that he ought to—I will answer it this way. Unfortunately, I watched the witness and listened to him, and I was not convinced that he had ever had an injury that was caused by his present complaints."

The court denied claimant's motion for a new trial, and claimant appealed to this court.

In a worker's compensation case, the burden of proof is on the claimant to prove the essential elements of his claim by a preponderance of the evidence. *Nuanes v. State ex rel. Wyoming Worker's Compensation Division*, Wyo., 694 P.2d 86, 89 (1985). Claimant's claim arose under § 27–12–403, W.S.1977, which states in part:

"Permanent partial disability means the loss or permanent impairment of a limb or sense, or any other injury known to surgery or medicine to constitute permanent impairment of a bodily function." The remainder of the statute sets the level of compensation for the various types of permanent partial disability. Section 27–12–403, by employing the term of art "injury," incorporates additional essential elements from the definition of injury found in § 27–12–102(a)(xii), W.S.1977. The portions of the definition pertinent to this case are as follows:

" 'Injury' means any harmful change in the human organism *other than normal aging* * * * arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer * * *." (Emphasis added.)

█ Under the factual setting of this case and the statutes outlined above, claimant had to prove by a preponderance of the evidence that he suffered:

(1) A harmful change in the human organism

(2) which constituted a permanent impairment of a bodily function

(3) which arose out of and in the course of employment [3]

(4) and which he incurred while at work in or about the premises occupied, used or controlled by the employer.

In determining whether an unsuccessful claimant has met his burden of proof on an essential element, we must assume on review that the evidence favoring the employer is true and leave out of consideration entirely the evidence presented by the claimant which conflicts with the employer's evidence. We must also give the evidence of the successful employer every reasonable inference that can be drawn from it. *Nuanes v. State ex rel. Wyoming Worker's Compensation Division*, supra. Finally, after reviewing the evidence in this light we can reverse the trial court only if its

---

**3.** This element of the claim has also been established in Wyoming case law, e.g., *Bocek v. City of Sheridan*, Wyo., 432 P.2d 893, 894 (1967).

findings are "clearly erroneous or manifestly wrong and totally against the evidence." *Consolidated Freightways v. Drake*, Wyo., 678 P.2d 874, 878 (1984).

The element upon which this case turns is the causal connection between claimant's employment and his disability. After reviewing the facts in this case, we cannot say that the trial court's finding on this issue was clearly erroneous. We reach this conclusion even though the only medical testimony on causation, Dr. Kline's statements, favored the claimant.

The district court recognized that Dr. Kline's testimony on causation depended upon the accuracy of appellant's account of his injury as he related it to the doctor. At the hearing on claimant's motion for a new trial, the court stated:

"Unfortunately, I watched the witness and listened to him, and I was not convinced that he had ever had an injury that was caused by his present complaints. His present complaints are pre-existent, and the doctors have diagnosed them as an arthritic condition, a degenerative arthritic condition. The doctor is relying on Mr. Potter saying, well, I think I slipped and fell in January and February. Then he says that this was a long-standing condition that was actually caused over the years by the normal aging process, coupled with his normal activities, whatever they might have been; that in his view, *if he suffered this slip and fall*, that was, quote, 'the straw that broke the camel's back,' unquote. *I don't think the court can take that as expressing a medical opinion to a reasonable degree of medical certainty, that he suffered a 25 percent permanent partial disability by a work-related accident."* (Emphasis added.)

Dr. Kline did not learn of the alleged accidents until the summer of 1984 and, even then, there were never any objective tests showing that the incidents took place. The tests revealed only that claimant suffered from degenerative arthritis, a condition that had, without question, developed over a long period of time. Claimant could have given Dr. Kline an inaccurate history which Dr. Kline repeated in testifying at the trial.

■ The district court had an ample basis to conclude that claimant might have concocted the work-related accidents. First, there was claimant's general demeanor as a witness, something we cannot reconstruct from a cold record, but something which the district court found important. At the hearing on claimant's motion for a new trial, the court stated:

"I was not overly impressed with the weight of the claimant's testimony—and my function is sorting out and assigning credibility and weight. In all honesty, I would have to say that * * * I was not convinced that he had ever had an injury that was caused by his present complaints."

Second, claimant's credibility was damaged when a witness contradicted claimant's own testimony that he was restricted to sedentary activities. The witness testified that he saw claimant waterskiing on Wheatland Reservoir in the summer of 1984. Finally, when the claimant spoke to Dr. Kline in the summer of 1984, claimant had the necessary knowledge and motive to create a false claim. He had filed about 25 worker's compensation claims in the preceding ten years. And, he was angry with his employer as a result of his retirement. We think that the district court could have legitimately concluded from the evidence that the worksite accidents did not occur or that if they did occur, they did not result in injury.

Even if the district court had concluded that claimant had actually experienced the work-related accidents in 1984, the court could still have found that there was no causal connection between the accidents and the disability. The court heard Dr. Kline's critical testimony in person and apparently felt that the doctor was not very sure of his opinions. The weakness of the doctor's opinions is clearly shown by his affidavit which accompanied claimant's motion for a new trial. In that affidavit Dr. Kline stated:

"I cannot say with medical certainty the extent to which the pre-existing disease, as opposed to employment trauma contributed to Mr. Potter's current disability. * * * If I was required to render my best educated guess on this question, I would say that employment related traumas probably constituted 25% to 40% of the total cause of the permanent partial disability from which Mr. Potter currently suffers."

This kind of speculation, especially when based on a questionable history given by the claimant, could not satisfy the claimant's burden of proving causation.

In summary, we think that the district court—which was in a better position to judge the demeanor, truth and veracity of the witnesses and which weighed the testimony of Dr. Kline and the other witnesses testifying at the trial—could reasonably have found against claimant on the causation element. The district court's denial of the claim was not contrary to the great weight of the evidence.

Affirmed.